UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID TALBOT<br>347 Montcalm<br>San Francisco, CA 94110<br><br>      Plaintiff,<br><br>      v.<br><br>U. S. DEPARTMENT OF<br>      STATE,<br>The Executive Office<br>Office of the Legal Advisor<br>Room 5519<br>2201 C Street NW<br>Washington, D.C. 20520<br><br>      Defendant<br><br>      and<br><br>CENTRAL INTELLIGENCE<br>      AGENCY,<br>Washington, D.C. 20505<br><br>      Defendant. | Civil Action No.  17-cv-588 |

COMPLAINT FOR INJUNCTIVE RELIEF
[Freedom of Information Act, 5 U.S.C. § 552]

Background

1. Plaintiff DAVIDTALBOT is a journalist and a representative of the news media.  He was co-founder of Salon.com, an online newspaper.  He is also an author.  His book <u>Brothers: The Hidden History of the Kennedy Years</u> (New York:  Simon & Schuster, Inc., 2007) reported that a week after President Kennedy's assassination, Attorney General Robert F. Kennedy and the President's widow, Jacqueline Kennedy, sent an intimate friend, William Walton to Moscow

to report to Soviet authorities that "Bobby and Jackie believed that the president had been killed by a large political conspiracy;" that "[t]hey were convinced JFK was the victim of U.S. opponents." Id. at 30.  President Kennedy had himself expressed frustration with the CIA on different occasions.  In April, 1961, after an unsuccessful attempt to depose Charles de Gaulle as president of France, Kennedy told the French Ambassador to the United States that "the CIA is such a vast and poorly controlled machine that the most unlikely maneuvers might be true." After the Bay of Pigs fiasco, in that same month, he threatened to "splinter the CIA into a thousand pieces and scatter it into the winds." ("CIA: Marker of Policy or Tool? survey finds widely feared agency is tightly controlled" *New York Times*. April 25, 1966.)

2. In 2015 Harper Collins published another book written by TALBOT, The Devil's Chessboard: Allen Dulles, the CIA, and the Rise of America's Secret Government.  Allen Dulles was Director of Central Intelligence at the time of the Bay of Pigs invasion in April, 1961. As a result of that debacle, Kennedy fired Dulles.

After Kennedy's assassination, President Lyndon Baines Johnson, appointed a commission to investigate the president's murder.  The President's Commission on the Assassination of President Kennedy (more popularly known as "the Warren Commission") was comprised of seven members, none of whom were from the Kennedy wing of the Democratic Party.  The most active member on the Commission was Allen Dulles.

3. During the investigation into the assassination of the President conducted by the House Select Committee on Assassinations ("HSCA") in 1976-1978, one important focus to which the Committee devoted attention was CIA officer William ("King") Harvey ("Harvey"). In June, 1962, Harvey was made the head of the Central Intelligence Agency's ("CIA") Task Force W, which was tasked with the overthrow, and assassination, of Fidel Castro.  In

connection with the CIA Castro assassination plots, Harvey conspired with members of the American Mafia to try to effectuate the assassination of Cuban Prime Minister Fidel Castro. As a result, Harvey developed a long-lasting friendship with mobster Johnny Roselli. In November, 1961, the CIA also tasked Harvey with the creation of a general assassination capability for the CIA, a project known as ZRRIFLE. As part of the ZRRIFLE program, Harvey was tasked with developing criminal talent in Europe for possible use in assassination activity. If, and when, project ZRRIFLE ended is a matter shrouded in mystery. Harvey was removed as the Chief of Task Force W in October, 1962, at the insistence of Attorney General Robert Kennedy because Harvey had sent a series of raiding parties into Cuba at the height of the Cuban Missile Crisis. Harvey was transferred to Rome in June, 1963, becoming the Station Chief of the Rome Station. At the time relevant herein Havey's deputy in Rome was F. Mark Wyatt.

4. F. Mark Wyatt attended a CIA meeting with Harvey on Sardinia on November 22, 1963. When news of the Kennedy assassination reached them, Harvey blurted out remarks that led Wyatt to suspect that Harvey had prior knowledge of the Kennedy assassination. Wyatt told a journalist, in 1998, that he had also bumped into Harvey on a flight to Dallas in November 1963. Wyatt, prior to his death, publically acknowledged having paid huge sums of taxpayer money on behalf of the CIA to influence the outcome of elections in foreign countries. See <u>The Devil's Chessboard: Allen Dulles, the CIA, and the Rise of America's Secret Government</u>, pp. 474-478.

## JURISDICTION AND PARTIES

5. Plaintiff DAVID TALBOT ("TALBOT") brings this action under the Freedom of Information Act ("FOIA'), 5 U.S.C. § 552, as amended.

6. Defendant UNITED STATES DEPARTMENT OF STATE ("DOS" or "State") is an agency of the United States and has possession and control of information and records requested by TALBOT which are the subject of this action.

7. Defendant CENTRAL INTELLIGENCE AGENCY ("CIA") is an agency of the United States and has possession and control of information and records requested by TALBOT which are the subject of this action.

## COUNT I:  DEPARTMENT OF STATE RECORDS

8. TALBOT realleges and incorporates the allegations set forth in paragraphs 1-7 above.

9. By letter dated May 6, 2013, counsel for TALBOT submitted a FOIA request to the Department of State's Research and Liaison Branch.  His request sought:

(1).  All passport and visa records pertaining to former CIA official William King Harvey during the period January 1, 1950 through July 1, 1976.

(2). All passport and visa records pertaining to F. Mark Wyatt, a deceased former CIA officer during the period of January 1, 1948 through 1975.  See Exhibit 1.

10.  TALBOT's request also sought both a negative and an 8x10 glossy photograph of all photographs pertaining to Harvey and Wyatt.  Id.  It further asserted that as a representative of the news media, TALBOT could not be charged search fees, citing 5 U.S.C. § 552(a) (4) (A)(ii)(II), nor could he be charged copying costs pursuant to 5 U.S.C. § 552(a) (4) (iii).  Id. at 2.

11.  Although TALBOT'S request was miscaptioned as "FREEDOM OF INFORMATION ACT APPEAL" DOS responded to the request by letter dated September 16, 2013.  See Exhibit 2.  DOS acknowledged receipt of the request and, in regard to the request for records pertaining to Harvey, assigned it Case Control Number F-2013-15997.  DOS assured TALBOT that it would "begin the processing of your request based upon the information

provided in your communication." The form letter continued, however, that "[u]nusual circumstances, (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) may arise that would require additional time to process your request." Id. An identical form letter of the same date was issued by DOS assigning Case Control Number F-2013-15938 in regard to the request for records pertaining to Wyatt. See Exhibit 2.

    12. By letter dated September 24, 2015, Jonathan M. Rolblin, Director, Office of Legal Affairs and Law Enforcement Liaison, Bureau of Consular Affairs, Passport Services, Department of State, advised TALBOT that DOS had located ten documents on Wyatt and that it was releasing five in full and withholding five in part. See Exhibit 3.

    13. By form letter dated December 15, 2015, DOS apologized for the delay in responding to TALBOT's request two years earlier for records on Harvey. It stated that it had found no responsive records on Harvey. It then stated that "[t]he Department of State, Passport Services has conducted a search of its records from 1950 to 1976, and failed to locate any records relevant to your request." It then added that "[t]he search was conducted based on the information provided in your request. If you can provide us with any additional identifying data, such as an approximate date of issuance of the passport, a passport number, or other names used by the subject, we will be happy to conduct an additional search." See Exhibit 4.

    14. By letter dated April 14, 2016, counsel for TALBOT submitted a request to DOS for records relating to the searches they had made for records responsive to TALBOT's original request for passport and visa records on Harvey. See Exhibit 5.

    13. No further communications have been exchanged between DOS and TALBOT to date.

16. Plaintiff has a legal right under the FOIA to obtain the information he seeks, and there is no legal basis for the denial of said right.

COUNT II: CENTRAL INTELLIGENCE AGENCY RECORDS

17. TALBOT realleges and incorporates the allegations set forth in Paragraphs 1-7 and 14-16 above.

18. By letter dated May 6, 2013, counsel for TALBOT submitted a FOIA request to the Central Intelligence Agency ("CIA") which sought:

(1). All records pertaining to temporary duty (TDY) travel during the period January 1950 through July 1, 1976 for [William King] Harvey, and January 1, 1948 through 1975 for [Mark] Wyatt.

(2). All passport and visa records pertaining Wyatt and Harvey.

(3). All photographs of Harvey and Wyatt, whether associated with passports or visas or otherwise.  Please provide 2 8x10 glossies[;] and

(4). All records reflecting assignments to an[y] station, post, base, unit or other component of the CIA during the period January 1, 1950 through July 1, 1976 for Harvey, and January 1, 1948 through 1975 for Wyatt. See Exhibit 6.

19. TALBOT's request also sought both a negative and an 8x10 glossy copy of all photographs pertaining to Harvey and Wyatt. Id.  It further asserted that as a representative of the news media, TALBOT could not be charged search fees, citing 5 U.S.C. § 552(a) (4) (A)(ii)(II), nor could he be charged copying costs pursuant to 5 U.S.C. § 552(a) (4) (iii).  Id. at 2.

20. CIA acknowledged receipt of the request by letter dated 12 September 2013 and assigned it Number 2013-01664.  The acknowledgment letter also requested TALBOT's

commitment to pay "all applicable fees before" the CIA would proceed with the search.  See Exhibit 7.

21.  On October 10, 2013, TALBOT by counsel appealed the decision to deny waiver of fees for search, review and copying costs on the grounds that the denial violated the FOIA's fee waiver provisions and the CIA's own regulations, i.e., 32 C.F.R. Section 1900.13(b)(2).  See Exhibit 8.

22. By letter dated 14 July 2014 the CIA responded to the appeal. It advised that it had located 277 documents, consisting of 419 pages, relating to Item 1 of the request, TDY records for travel for William King Harvey.  It rejected the appeal of the denial of the fee waiver for records responsive to Item 1 of the request because there had been a previous request for the same records.  Thus the records had "been released and [are]already in the public domain" and "re-release would not contribute significantly to the public understanding of the operations and activities of the United States Government."  See Exhibit 9.

23. Notwithstanding this, the CIA granted the request for a fee waiver with respect to Item 2 of the request as a matter of administrative discretion on the basis of CIA's belief that fees would be minimal.  The CIA did not refer to the other two items of the original request.  Id.

24. On July 19, 2014,TALBOT paid the fee requested for copies of what the CIA represented to be the previously released results of a prior search for TDY records on Harvey and Wyatt.  The payment was made with an express reservation of TALBOT's right to appeal the charges.  See Exhibit 10.

25.  By letter dated August 5, 2014, TALBOT appealed the CIA's July 14, 2015, decision denying TALBOT a fee waiver.  See Exhibit 11.  As of the date of this filing, the CIA has not responded to TALBOT'S appeal.

26. In response to a letter from the CIA dated August 22, 2014, on August 28, 2014, TALBOT resubmitted the fee requested by CIA, again with an express reservation of the right to appeal. See Exhibit 12 which is the document transmittal letter. Documents provided are not being filed at this time.

27. On October 28, 2014, the CIA provided copies of the 277 documents, consisting of 419 pages, in response to Item 1 of TALBOT's FOIA request. See Exhibit 13. Many of the documents provided are highly redacted and no Vaughan Index was provided with the documents.

28. None of the documents provided by CIA on October 28, 2014, address the TDY travel of F. Mark Wyatt. All the documents provided relate to William King Harvey and appear to be solely from the CIA's Personnel and Finance components. There is no indication that any search of any component, office or division of the CIA other than those two offices have been made for records related to William King Harvey's TDY travel. Of the 419 pages provided regarding Harvey's TDY, 236 pages are from the period 1947 to 1960; 49 pages cover the period from 1960 to 1964; and the remaining 134 pages relate to the period from 1964 until Harvey's retirement in 1967, of which 105 pages deal with his retirement. Of the pages provided, 22 clearly refer to TDY travel. Of the pages clearly referring to TDY travel, 18 are from the years 1948 to 1959, inclusive; 4 are from the years 1960 to 1964, inclusive, and none are from 1965 to the end of Harvey's employment. In addition, there are at least 20 documents that cannot be determined to relate to TDY travel due to either redaction or poor copy quality. Of those 20 possible documents 8 are from the years 1948 to 1959, inclusive; none are from the years 1960 to 1964, inclusive, and 12 are from 1965 to the end of Harvey's employment. Id.

29.  CIA has made no substantive response to items numbered 2, 3, and 4 in TALBOT's request with the exception of a xeroxed copy of one photograph of William King Harvey included in the 419 pages provided to TALBOT by the CIA on October 28, 2014.  Id.

30. Except as specified above, no other or further communication has been received from CIA in regard to this FOIA request.

COUNT III:  CIA FEE WAIVER FOR<br>REPRESENTATIVE  OF NEWS MEDIA SATUS

31. TALBOT realleges and incorporates the allegations set forth in Paragraphs 1-7, 14-16, and 18-31, above.

32. TALBOT is a distinguished journalist whose work is widely recognized and acknowledged as making a significant contribution to the public understanding of U.S. Government operations.

33. TALBOT is a former editor of "Mother Jones" magazine, one of the country's most acclaimed vehicles for investigative journalism. His work has also appeared in "The New Yorker," "Time," the Los Angeles Times, and the San Francisco Chronicle, as well as numerous other publications.

34. TALBOT has received numerous awards for his outstanding work, including Online Journalism Association awards for general excellence and investigative journalism, National Magazine Awards for investigative journalism, Ohio University's E.W. Scripps School of Journalism Award for Lifetime Achievement, and the Society of Professional Journalists Award for Lifetime Achievement. He has also lectured at the Nieman Foundation for Journalism at Harvard.

35. TALBOT has written investigative articles on a broad spectrum of topics directly concerning government operations and functions, including, inter alia, nuclear safety, toxic waste

disposal, climate change, automobile safety, medical industry abuses, election fraud, political corruption, and Veterans healthcare scandals.  Talbot has also written the critically acclaimed books <u>Brothers: The Hidden History of the Kennedy Years</u>, an investigative analysis of the policies and actions of President John F. Kennedy and Robert F. Kennedy and events surrounding their assassinations, and <u>The Devil's Chessboard: Allen Dulles, the CIA, and the Rise of America's Secret Government</u>.

36. TALBOT has in the past published articles in print and internet media directly addressing subjects related to topics involved in this FOIA request, including, but not limited to: "Inside the Plot to Kill JFK: The Secret Story of the CIA and What Really Happened in Dallas," Salon, Nov. 22, 2015, available at http://www.salon.com/2015/11/22/inside_the_plot_to_kill_jfk_the_secret_story_of_the_cia_and_what_really_happened_in_dallas/; "'There Was Nothing Rogue' about the CIA's Bill Harvey," JFKFacts, Nov. 23, 2015, available at http://jfkfacts.org/assassination/news/there-was-nothing-rouge-about-the-cias-bill-harvey/#more-21137.  He has also been interviewed on television regarding these matters.  <u>See</u>, e.g., http://library.fora.tv/2008/10/12/David_Talbot_Author_and_Founder_of_Salon.

37. Plaintiff TALBOT is by law a representative of the news media and there is no lawful basis for denial of that status and his right to a waiver of fees in this case.  5 U.S.C. § 552(a)(4)(A)(ii)(II); 32 C.F.R. Sec. 1900.02(h)(3).

38. Denial of the fee waiver for TALBOT who makes his living as an investigative journalist turns the FOIA statute on its head and thwarts explicit Congressional intent in enacting the statute's fee waiver provisions.

39. TALBOT has a legal right to the fee waiver sought and Defendant CIA has no legal basis for denial of that right.

### COUNT IV:  CIA WAIVER OF COPYING CHARGES

41. TALBOT realleges and incorporates the allegations set forth in Paragraphs 1-7, 13-14, 18-31, and 33-40 above.

42. Disclosure of the information sought is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in TALBOT's commercial interest.

43. TALBOT has a legal right to the waiver of copying charges sought and Defendant CIA has no legal basis for denial of that right.

WHEREFORE, Plaintiff prays that this Court:

1) order defendants to make the requested information promptly available to him;

2) order defendants to grant plaintiff a waiver of copying costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

3) order that plaintiff is entitled to status as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and waiver of fees pursuant thereto;

4) order defendants to conduct a thorough search for any and all operational files or records, including but not limited to any and all files, records or information maintained under or containing any code name, pseudonym, alias, or cryptonym;

5) order defendants to provide plaintiff a <u>Vaughn</u> index inventorying all responsive records and itemizing and justifying all withholdings;

6) expedite this action in every way pursuant to 5 U.S.C. § 552 and 28 US.C. S 1657;

7) award plaintiff attorney fees pursuant to 5 U.S.C. 552(a)(4)(E);

8) order defendant to undertake discovery;

9) order appointment of a Special Master; and

10) order such other and further relief as may be warranted.

                                  Respectfully submitted,

                                  ____s/James H. Lesar/s____
                                  James H. Lesar #114413
                                  1003 K Street, N.W.
                                  Suite 640
                                  Washington, D.C. 20001
                                  Phone: (202) 393-1921

                                  Counsel for Plaintiff


                                  ____s/Dan L. Hardway/s___
                                  Dan L. Hardway #WV0001
                                  PO Box 625
                                  Cowen, WV 26206
                                  Phone (304) 449-4722
                                  Fax: (304) 405-4121

                                  Counsel for Plaintiff


Dated: March 31,2017